# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| EDDY EDGE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RESOLUTE ENERGY CORPORATION, RICHARD F. BETZ, TOD C. BENTON, JOSEPH CITARRELLA, WILKIE S. COLYER JR., JAMES E. DUFFY, THOMAS O. HICKS, JR., GARY L. HULTQUIST, JANET W. PASQUE, ROBERT J. RAYMOND, NICHOLAS J. SUTTON, WILLIAM K. WHITE, CR SUB 1 INC., CR SUB 2 LLC and CIMAREX ENERGY CO.,<br><br>Defendants, | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiff Eddy Edge ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      It is a basic tenet of corporate law that directors manage the business and affairs of a corporation, not the shareholders.  Directors cannot manage the corporation based on shareholder sentiment; they must do what is in the best interest of the corporation, even if a majority of shareholders disagree.  Acquiescing to shareholder whim is even less tenable given the typical information imbalance between directors and shareholders, as directors typically have more

information concerning the affairs, prospects, risks, and benefits facing a corporation than do the shareholders.  Yet the Board of Directors of Resolute Energy Corporation ("Resolute Energy" or the "Company") did just that, agreeing to sell the Company after a small number of shareholders demanded a sale to increase the stock price.

2.      Plaintiff brings this class action on behalf of the public stockholders of Resolute Energy  against defendants for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Cimarex Energy Co. through its wholly-owned subsidiaries CR Sub 1 Inc. and CR Sub 2 LLC (collectively "Cimarex").

3.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with the Securities and Exchange Commission ("SEC") on December 14, 2018.  An amended definitive registration statement was filed on January 10, 2019 setting a vote date for February 22, 2019.  The S-4 recommends that Resolute Energy shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Resolute Energy is acquired by Cimarex.   The Proposed Transaction was first disclosed on November 19, 2018, when Resolute Energy and Cimarex announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Cimarex will acquire all of the outstanding shares of common stock of Resolute Energy in a mix of cash and stock valued at $35.00 per share.  The deal is valued at approximately $1.6 billion and is expected to close by the end of the first quarter of 2019.

4.      The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial

projections prepared by Resolute Energy management, as well as the financial analyses conducted by Goldman Sachs & Co. LLC ("Goldman Sachs") and Petrie Partners, LLC ("Petrie"), Resolute Energy's financial advisors.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to Resolute Energy's shareholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Resolute Energy's shareholders.   In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

6.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Resolute Energy.

7.      Defendant Resolute Energy is a corporation organized and existing under the laws of the State of Delaware.  The Company's principal executive offices are located at 1700 Lincoln Street, Suite 2800, Denver, Colorado 80203.  Resolute Energy common stock trades on NYSE under the ticker symbol "REN."

8.      Defendant Richard F. Betz has been CEO and a director of the Company since 2017.  Previously, Defendant Betz served as Chief Operating Officer from 2012 to 2016, was Senior Vice President, Strategy and Planning from September 2009 to March 2012, and served as Vice President-Business Development from July 2009 to September 2009.  Defendant Betz held the role of Vice President, Business Development for the predecessor to Resolute Energy from

2004 to July 2009.

9.      Defendant Tod C. Benton has been a director of the Company since 2017.

10.     Defendant Jospeh Citarrella has been a director of the Company since 2018. Defendant Citarrella is a managing partner at Monarch Alternative Capital LP ("Monarch"). Before joining Monarch in May 2012, Defendant Citarrella served as an Associate at Goldman Sachs in the Global Investment Research group, covering the integrated oil, exploration and production, and refining sectors.

11.     Defendant Wilkie S. Colyer, Jr. has been a director of the Company since 2018.

12.     Defendant James E. Duffy has been a director of the Company since 2009.

13.     Defendant Thomas O. Hicks, Jr. has been a director of the Company since 2009.

14.     Defendant Gary L. Hultquist has been a director of the Company since 2014.

15.     Defendant Janet W. Pasque has been a director of the Company since 2017. Defendant Pasque served as Senior Vice President, Land and Development from September 2009 to December 2009, and served as Vice President-Land from July 2009 to September 2009. Previously, Defendant Pasque served as Vice President, Land of the predecessor to Resolute Energy from 2004 to July 2009.

16.     Defendant Robert J. Raymond has been a director of the Company since 2018.

17.     Defendant Nicholas J. Sutton has been a director of the Company since 2009 and has been Executive Chairman of the Board since 2017.  Defendant Sutton served as Chairman of the Board and CEO from 2009 until 2017.

18.     Defendant William K. White has been a director of the Company since 2014.

19.     Defendants Betz, Benton, Citarrella, Colyer, Duffy, Hicks, Hultquist, Pasque, Raymond, Sutton, and White are collectively referred to herein as the "Board."

4

20.     Defendant Cimarex Energy Co. is a Delaware corporation with its principal executive offices located at 1700 Lincoln Street, Suite 3700, Denver, Colorado 80203.

21.     Defendant CR Sub 1 Inc. is a Delaware corporation and is a wholly owned subsidiary of Cimarex Energy Co.

22.     Defendant CR Sub 2 LLC is a Delaware limited liability company and a wholly owned subsidiary of Cimarex Energy Co.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

24.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

25.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) at least some of the conduct at issue took place and had an effect in this District; and (ii) Resolute Energy is incorporated in this District.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Resolute Energy common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

27.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable.  As of November 16, 2018, Resolute Energy had approximately 23.1 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A.  The Board Capitulated to Certain Shareholders Despite Believing in Resolute Energy's Standalone Prospects

28.     Resolute Energy is an oil and gas company that operates in the Delaware Basin in west Texas.   The Company had 53.4 million barrels of oil equivalent in estimated net proved reserves, of which 47% were oil.   In 2017, Resolute Energy began a two-rig drilling program to spud 22 wells; the Company spudded 25 wells, and brought 21 of those wells on production.   For 2018, the Company planned to drill 42 wells and bring 38 wells on production.

29.     Oil is the main source of revenue for Resolute Energy.   In 2017, oil sales accounted for 84% of Resolute Energy's revenues of $303.5 million.   Revenues increased $139 million from 2016, mainly because of increased production.   The Company saw income for operations for the first time in five years in 2017; that year also saw the smallest net loss posted by the Company in the last five years.

30.     Despite the encouraging financial results, a small number of Resolute Energy's

shareholders were unhappy with the way the Board managed the Company. On January 26, 2018, Monarch Alternative Capital LP ("Monarch") filed with the SEC a letter that it previously sent to the Board. In the letter, Monarch seemed to praise how the Company "successfully navigated a tumultuous commodity price cycle, unlocked significant value through drilling in the Permian basin, and transformed the Company . . . into a more focused growth enterprise with what we believe is some of the world's most attractive drilling inventory." But that was not enough. Monarch was unhappy with Resolute Energy's stock price performance, calling the stock price "languish[ing] at a flaring discount to other Permian operators." The culprit, according to Monarch, was the Company's lack of operating scale and small market capitalization. And according to Monarch, growing its operating scale required Resolute Energy to increase its market capitalization. The solution? Sell the Company. Of course, Monarch admitted that its "single greatest motivation is to maximize the value of Resolute [Energy]'s common stock." Not the long-term value of the Company, just the stock.

31.    Other Resolute Energy shareholders soon followed in clamoring for a sale of the Company. According to the S-4, Kimmeridge Energy Management Co. voiced its support for Monarch's position on January 29, 2018. On February 2, 2018, Fir Tree Capital Management LP filed a Schedule 13D with the SEC, stating "Fir Tree believes that a business combination or other strategic transaction with a qualified partner is in the best interest of shareholders and, therefore, considers it vital that [Resolute Energy] diligently conduct a meaningful, good faith search for possible partners." VR Global Partners, L.P. filed a Schedule 13D with the SEC on February 7, 2018, echoing Monarch and Fir Tree.

32.    The pressure on the Board escalated in March 2018 when Monarch filed a preliminary proxy with the SEC to urge shareholders to elect Monarch's candidates for director.

By that time, the Company had retained Petrie and Goldman Sachs to assist with defending the Company from activist shareholders.  On May 15, 2018, Monarch and the Company came to an agreement: the Board would increase by three, adding Defendants Citarrella, Colyer and Raymond as representatives of long-time Resolute Energy shareholders; and the Board would be declassified, with each director elected at the annual shareholder meeting.  Kimmeridge filed a Schedule 13D with the SEC on June 14, 2018, stating its approval of the agreement between Monarch and Resolute Energy.  Kimmeridge also reiterated its desire for the Company to sell itself.

33.     The agreement with Monarch did not satisfy the shareholders.  In a press release issued on October 11, 2018, the Company stated that the Board was evaluating alternatives available to the Company, including a combination, to maximize shareholder value.  This was not enough.  In a letter sent to the Board on October 19, 2018, Kimmeridge demanded that the Board begin a formal process to sell the Company.  Lion Point Capital, LP filed a Schedule 13D with the SEC on October 23, 2018, and called for Resolute Energy to sell the Company and discuss changes in the size and composition of the Board.  Kimmeridge also expressed displeasure with the Board in its amendment to its Schedule 13D filed with the SEC on November 1, 2018, threatening to force a change in the Board or a sale of the Company and working with other shareholders or potential acquirers to do so.  VR Global Partners, L.P. also filed an amendment to its Schedule 13D with the SEC on November 1, 2018, which stated that "[n]otwithstanding significant production growth, [Resolute Energy] has failed to demonstrate that it can deliver shareholder value as it grows production, and, furthermore, [Resolute Energy]'s lack of scale makes it exceedingly unlikely that it will be able to deliver substantial shareholder value in the future." VR Global Partners called on the Board to immediately begin a process to sell the Company "in the

nearest future."

34.     While Resolute Energy's institutional shareholders believed that the Company was doomed, the Board believed otherwise.  The S-4 notes that in the August 1, 2018 Board meeting, the Company expected "significant production growth" in its drilling, which the Board believed was not reflected in the Company's stock price.  In the October 11, 2018 press release, Defendant Betz was quoted as stating: "As expected, our 2018 development program has begun to pay in dividends in the form of significantly increased production and cash flow."  The press release also noted "improving industry conditions."  The Board's confidence in the Company's prospects are reflected in the analyses conducted by Goldman Sachs and Petrie.  Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* resulted in an implied present value of Resolute Energy as high as $44.33 per share, while the *Premia Analysis* calculated an implied value for Resolute Energy as high as $42.08 per share.  Petrie's *Discounted Cash Flow Analysis* implied an equity value for Resolute Energy as high as $61.01 per share, while the *Going Concern Analysis*, which specifically looked at the potential performance of Resolute Energy as a standalone company, calculated an implied equity value as high as $45.00 per share.

35.     Resolute Energy's potential was not enough for Kimmeridge, VR Global Partners, Lion Point Capital, Fir Tree or Monarch.  They demanded that the Board sell the Company to raise the stock price.  The Board capitulated, entering into the Merger Agreement less than a month after Kimmeridge, VR Global Partners and Lion Point Capital demanded a sale of the Company.

**B.  Resolute Energy's Officers Stand to Receive Benefits Unavailable to the Class**

36.     The S-4 acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

37.     Restricted stock, outperformance RSUs, options, SARs and restricted cash awards

that have been awarded to and are held by Resolute Energy's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through their respective employment agreements, will create a windfall for Resolute Energy's executive officers that is unavailable to the common stockholders.  As demonstrated in the following chart, the executive officers of Resolute Energy in total stand to receive up to $35.6 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Cash | Equity | Perquisites/ Benefits | Other | Total |
|---|---|---|---|---|---|
| Richard F. Betz | $4,309,366 | $8,951,065 | $60,303 | $97,480 | $13,418,214 |
| James M. Piccone | — | $1,260,910 | — | $154,111 | $1,415,021 |
| Theodore Gazulis | $1,950,651 | $5,860,459 | $48,487 | $97,480 | $7,957,076 |
| Michael N. Stefanoudakis | $1,950,651 | $4,861,968 | $69,441 | $55,702 | $6,937,761 |
| Bob D. Brady, Jr. | $1,893,836 | $3,920,374 | $40,610 | $48,740 | $5,903,560 |

38.     The members of the Board and the executive officers stand to gain handsomely even if they stay on after the Proposed Transaction closes.  In total, as demonstrated in the following chart, the executive officers and Board members will obtain up to $56.8 million (using the cash consideration of $35.00 per share):

| | Total Restricted Stock Consideration | Total Outperformance RSUs Consideration | Total Options Consideration | Total SARs Consideration | Total Restricted Cash Consideration |
|---|---|---|---|---|---|
| *Executive Officers* | | | | | |
| Nicholas J. Sutton | $1,274,000 | $736,575 | $6,697,675 | $13,553,634 | $273,872 |
| Richard F. Betz | $4,534,355 | $2,543,170 | $549,488 | $3,334,113 | $97,480 |
| Theodore Gazulis | $2,460,955 | $1,417,185 | $549,488 | $1,646,121 | $97,480 |
| Michael N. Stefanoudakis | $2,405,480 | $1,377,005 | $313,984 | $940,636 | $55,702 |
| Bob D. Brady, Jr. | $1,898,995 | $1,065,085 | $1,191,934 | $2,469,165 | $48,740 |
| James A. Tuell | $1,315,720 | $755,650 | $1,028,370 | $897,706 | $43,053 |
| *Non-Employee Directors* | | | | | |
| Tod C. Benton | $156,905 | – | – | – | – |
| Joseph Citarrella | $96,950 | – | – | – | – |
| Wilkie S. Colyer, Jr. | $96,950 | – | – | – | – |
| James E. Duffy | $156,905 | – | – | – | – |
| Thomas O. Hicks, Jr. | $156,905 | – | – | – | – |

| Gary L. Hultquist | $156,905 | – | – | – | – |
| Janet W. Pasque | $156,905 | – | – | – | – |
| Robert J. Raymond | $96,950 | – | – | – | – |
| William K. White | $156,905 | – | – | $673,948 | – |

### C.  The Preclusive Deal Protection Devices

39.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

40.     By way of example, section 6.3(b) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal.   Section 6.3(a) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

41.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Cimarex.  For example, pursuant to section 6.3(e) of the Merger Agreement, the Company must notify Cimarex of any offer, indication of interest, or request for information made by an unsolicited bidder.  Thereafter, should the Board determine that the unsolicited offer is superior, section 6.3(f)(iii) requires that the Board grant Cimarex five (5) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior.  Cimarex is able to match the unsolicited offer because, pursuant to section 6.3(e) of the Merger Agreement, the Company must provide Cimarex with the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

42.     In other words, the Merger Agreement gives Cimarex access to any rival bidder's information and allows Cimarex a free right to top any superior offer.  Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Resolute Energy, because the Merger Agreement

unfairly assures that any "auction" will favor Cimarex and allow Cimarex to piggy-back upon the due diligence of the foreclosed second bidder.

43.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Cimarex's inadequate offer price.

**D.  The Materially Incomplete and Misleading S-4**

44.     The Individual Defendants owe the stockholders a duty of candor.  They must disclose all material information regarding the Proposed Transaction to Resolute Energy stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

45.     On December 14, 2018, Defendants filed the S-4 with the SEC.  Defendants filed the amended definitive proxy on January 10, 2019.  The purpose of the S-4 is, inter alia, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.  However, significant and material facts were not provided to Plaintiff and the Class.  Without such information, Resolute Energy shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

***Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts***

46.     The S-4 discloses management-prepared financial projections for the Company which are materially misleading.  The S-4 indicates that in connection with the rendering of Goldman Sachs' and Petrie's fairness opinions, Goldman Sachs reviewed "certain internal financial analyses and forecasts for Resolute [Energy] prepared by its management . . . " and Petrie reviewed "certain non-public forecasted financial and operating data relating to Resolute [Energy]" prepared by Resolute Energy's management.  Accordingly, the S-4 should have, but failed to, provide certain information in the projections that Resolute Energy's management provided to the Board and Goldman Sachs and Petrie.

47.     Notably, Defendants failed to disclose the projections for Resolute Energy for all years covered by Goldman Sachs' and Petrie's analyses for: (a) oil production; (b) gas production; (c) NGL production; (d) NGL pricing; (e) assumed pricing differentials; (f) lease operating expense; (g) production and ad valorem taxes; (h) depletion, depreciation and amortization; (i) general and administrative expenses; (j) cash settled incentive awards; (k) any other line items used in the calculation of cash flow, as used by Goldman Sachs or Petrie; and (l) cash flow, as used by Goldman Sachs or Petrie.  The S-4 further fails to disclose whether Resolute Energy's management prepared financial projections of cash flow, or if it was Goldman Sachs and/or Petrie who prepared cash flow projections.  This omitted information is necessary for Resolute Energy stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs'
Financial Analyses***

48.     With respect to the *Illustrative Net Asset Value Analysis,* the S-4 fails to disclose the specific definition of "after-tax future cash flows" as utilized by Goldman Sachs in the analysis. The S-4 further fails to disclose the length of the time period during which cash flows were projected for the analysis, as well as whether only proved reserves were considered in the analysis, or if consideration was also given to probable and/or possible reserves as well.  In addition, the S-4 does not disclose the calculated amount of net present value of Resolute Energy's after-tax future cash flows for its existing developed reserves, four-year development plan for undeveloped reserves and development of additional undeveloped reserves.  The S-4 does not disclose the individual CAPM inputs and assumptions utilized by Goldman Sachs to derive the discount rate range of 10.5% to 12.5%.  Finally, the S-4 failed to disclose the separate calculated present value amounts of (a) estimated mark to market commodity hedges and earnouts, (b) general and administrative costs, (c) other corporate expenses, (d) the face value of Resolute Energy's net debt, and (e) taxes payable, all of which were used to determine Resolute Energy's net asset value.

49.     With respect to the *Illustrative Present Value of Future Share Price Analysis,* the S-4 fails to disclose the individual CAPM inputs and assumptions utilized by Goldman Sachs to derive the cost of equity rate of 12.7%.  The S-4 further fails to disclose the projected future share counts and debt balances utilized by Goldman Sachs for 2019 and 2020, as used to convert the future indications of EV to equity value for discounting.

50.     With respect to the *Selected Transactions Analysis*, the S-4 fails to disclose the individual metrics of transaction value, current production and net acreage for each of the selected transactions.

***Materially Incomplete and Misleading Disclosures Concerning Petrie's Financial Analyses***

51.     With respect to the *Discounted Cash Flow Analysis,* the S-4 fails to disclose the full NYMEX 5-year strip pricing scenario utilized by Petrie for the analysis.  The S-4 further fails to disclose the specific adjustments made by Petrie for location and quality differentials. The S-4 does not disclose the specific discount rates that were applied to each respective reserve category, formation and development status categorization used in the analysis, as well as the individual inputs and assumptions utilized by Petrie to derive each of the specific discount rates. Additionally, the S-4 does not disclose the definition of "after-tax cash flows" utilized by Petrie in the analysis, or the length of the time period during which cash flows were projected for the analysis.  Finally, the S-4 fails to disclose the separate calculated net present value amounts for the adjustments made by Petrie for (a) general and administrative expenses, (b) commodity derivatives, (c) cash taxes and (d) other assets and liabilities.

52.     With respect to the *Comparable Transaction Analysis,* the S-4 fails to disclose the individual metrics and multiples for each of the selected "precedent transaction," including for transaction value, dollars per acre, current production and net acreage.  The S-4 further fails to disclose the individual multiples for each of the "Oil & Gas Corporate Transactions" for: (a) purchase price/current year discretionary cash flow; (b) purchase price/forward year discretionary cash flow; (c) total investment/current year EBITDA; (d) total investment/forward year EBITDA; (e) total investment/proved reserves; and (f) total investment/current production.  Additionally, the S-4 does not disclose the value of the adjustments made by Petrie for (a) value of current production, (b) estimated value of other assets and liabilities, (c) long-term debt and (d) net working capital.  Finally, the S-4 fails to disclose the individual value ranges derived by Petrie in the "Oil & Gas Corporate Transactions" from applying multiples of: (a) 5.0x-7.0x purchase

price/current year discretionary cash flow; (b) 3.5x-5.5x purchase price/forward year discretionary cash flow; (c) 7.0x-9.0x total investment/current year EBITDA; (d) 5.0x-6.5x total investment/forward year EBITDA; (e) $20-$25 total investment/proved reserves; and (f) $55,000-$70,000 total investment/current production.

53.     With respect to the *Capital Market Comparison Analysis*, the S-4 fails to disclose the individual multiples observed for each of the selected public companies, including: (a) MV/2018E discretionary cash flow; (b) MV/2019E discretionary cash flow; (c) EV/2018E EBITDA; (d) EV/2019E EBITDA; (e) EV/proved reserves; (f) EV/2018E production; and (g) EV/2019E production.  The S-4 further fails to disclose the individual value ranges derived by Petrie from applying the multiples of: (a) 4.0x-6.0x MV/2018E discretionary cash flow; (b) 3.0x-4.0x MV/2019E discretionary cash flow; (c) 6.5x-8.0x EV/2018E EBITDA; (d) 4.0x-5.0x EV/2019E EBITDA; (e) $25-$30 EV/proved reserves; (f) $60,000-$75,000 EV/2018E production; and (g) $40,000-$50,000 EV/2019E production.

54.     With respect to the *Going Concern Analysis*, the S-4 fails to disclose the specific 2020 EBITDA amounts, under each of the pricing scenarios, to which the selected terminal multiples were applied.  The S-4 further fails to disclose the projected annual production and cost estimates under each of the pricing scenarios used to calculate EBITDA.  Additionally, the S-4 does not disclose the individual inputs and assumptions utilized by Petrie to derive the discount rates of 10.0% - 15.0%.  Finally, the S-4 does not disclose whether any value was attributed to the operations of Resolute Energy between 2018 and 2020, or if the concluded value from the analysis was only representative of the concluded terminal value.

*Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

55.    The S-4 also fails to disclose material information concerning the sales process. For example, the S-4 fails to state whether the confidentiality agreements Resolute Energy entered into with Company X, Company A, Company B and Company C are still in effect and whether those agreements contain DADW standstill provisions that preclude those parties from potentially making a topping bid for the Company.  The disclosure of the terms of any standstill provisions is crucial to Resolute Energy stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

56.    In addition, Goldman Sachs and Petrie made a number of presentations to the Board, yet those presentations were not disclosed in the S-4.  This includes the presentations made to the Board on August 1, 2018, October 25, 2018, October 30, 2018, and November 16, 2018.

57.    Finally, the S-4 fails to disclose information concerning potential conflicts of interest with Petrie and Goldman Sachs.  The S-4 notes that Goldman Sachs' Investment Banking Division had not been engaged by Cimarex for financial advisory or underwriting services during the two year period ending November 18, 2018.  However, the S-4 does not disclose whether Goldman Sachs performed other services, including financing, investing, trading, research or other services for Cimarex.  Additionally, the S-4 does not disclose the amount of compensation received by Petrie for services provided to Resolute Energy.

58.    This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.  And without all material information, Resolute Energy stockholders are unable to make a fully informed decision in connection with the Proposed

18

Transaction and face irreparable harm, warranting the injunctive relief sought herein.

59.     In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

60.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC.  Indeed, as directors of the Company, they were required to do so.  The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

61.     Further, the S-4 indicates that on November 18, 2018, Goldman Sachs and Petrie reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board oral opinions, which were confirmed by delivery of written opinions of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Resolute Energy shareholders.  Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Goldman Sachs and Petrie's financial analyses that has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

62.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law.  Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

63.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.    Defendants have filed the S-4 with the SEC with the intention of soliciting Resolute Energy shareholder support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

65.    In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Resolute Energy, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

66.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

67.    Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Resolute Energy shares and the financial analyses performed by Goldman Sachs and Petrie in support of their fairness opinions; and (iii) the sales process.

68.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Goldman Sachs and Petrie reviewed and discussed their financial analyses with the Board during various meetings including on November 18, 2018, and further states that the Board relied upon Goldman Sachs and Petrie 's financial analyses and fairness opinions in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

69.     The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

70.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.     The Individual Defendants acted as controlling persons of Resolute Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions

as officers and/or directors of Resolute Energy and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

72.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the S-4.

74.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

75.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

76.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to Resolute Energy shareholders unless and until Defendants agree to include the material information identified above in any such amendment;

C.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.     Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 15, 2019

**RIGRODSKY & LONG, P.A.**

*/s/ Brian D. Long*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

*Attorneys for Plaintiff*